**STATE v. COASTLAND CORP.**

[134 N.C. App. 269 (1999)]

STATE OF NORTH CAROLINA, Plaintiff v. COASTLAND CORPORATION, Defendant

No. COA98-1067

(Filed 20 July 1999)

## 1. Eminent Domain— Dept. of Administration condemnation—authority

The trial court did not err by concluding that the State was authorized to condemn defendant's undivided one-fifth interest in land used for mosquito control and wildlife management (an ownership arrangement resulting from a prior judicial decision). The Department of Administration can act to condemn land using either its own authority, N.C.G.S. § 146-22.1(1) (Board of Transportation procedures) or the authority of the requesting agency. It is clear that here the State utilized Transportation procedures, that the trial court could reasonably determine from the affidavits, exhibits, and the Secretary of Administration's findings that the DOA properly investigated all aspects of the requested acquisition as required by the statute, and that each of the necessary elements was included in the complaint and declaration.

## 2. Eminent Domain— statement of public use—wildlife management lands

The statement of public use in a condemnation action was sufficient where it stated that the lands were an integral part of Wildlife Resources Commission facilities and N.C.G.S. § 146-22.1 specifically authorizes the Department of Administration to take title to lands necessary or convenient to the operation of state owned facilities.

## 3. Eminent Domain— interest acquired—less than fee simple

The State may acquire less than a fee simple interest in property.

Appeal by defendant from judgment entered 24 April 1998 by Judge James E. Ragan, III, in Pamlico County Superior Court. Heard in the Court of Appeals 21 April 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Roy A. Giles, Jr., for the State.*

*Henderson, Baxter, Alford & Taylor, P.A., by David S. Henderson, for defendant-appellant.*

**STATE v. COASTLAND CORP.**

[134 N.C. App. 269 (1999)]

LEWIS, Judge.

Defendant appeals from the trial court's order denying its motion to dismiss the State's declaration of taking and notice of deposit. Defendant contends that the trial court lacked subject matter jurisdiction because "plaintiff has sought to condemn property for a purpose which is beyond their statutory authority." Defendant also asserts that the State failed to state a claim upon which relief could be granted because the taking was not for a public purpose. The trial court concluded that the State was authorized to take defendant's property pursuant to N.C. Gen. Stat. sections 146-22.1(1) and (10) (1991), and that the State might alternatively take the property pursuant to N.C. Gen. Stat. section 113-306(a) (1997). Defendant made fourteen assignments of error, and argues six of them in one massive contention that the "State's attempt to take real property of the defendant is not a taking for a public purpose."

Defendant and the State own approximately 1000 acres as tenants in common, with defendant owning a one-fifth undivided interest and the State owning the remaining four-fifths. This unusual ownership arrangement exists pursuant to a North Carolina Supreme Court decision. *See Taylor v. Johnston*, 289 N.C. 690, 224 S.E.2d 567 (1976). The State, using public funds, constructed impoundments on the property in 1963. The impoundments were intended to provide mosquito control and a management area for wildlife, including waterfowl, shorebirds, wading birds, turtles, and other creatures. The twelve miles of dikes that make up the impoundments, together with their pumping stations, pumps, sheds and utility buildings, have been maintained continuously by the State since the 1960's. The area serves as a habitat and/or breeding area for numerous species, including the endangered peregrine falcon and the threatened bald eagle. The land is available for public wildlife-based recreations such as fishing, birdwatching, and photography. Hunting is permitted in the impoundments an average of 20 days per year and in the marsh area approximately 60 days per year. Maintenance of the facility structures and equipment requires 124 man-days per year, habitat management requires 40 man-days per year, and regulation of the area requires 60 man-days per year. Average annual costs for operation of the facility since 1962 have been $30,030, not including labor which currently requires approximately $11,000 per year.

In 1985, defendant purchased its one-fifth undivided interest from John "Jack" Taylor, a party to the case establishing shared own-

ership with the State. The record indicates that defendant and the State have negotiated unsuccessfully to resolve the joint ownership situation since 1985. Defendant was willing to pay the State approximately $800,000 for the State's 80% interest in the land; however, an offer by the State to purchase defendant's 20% interest for $200,000 was refused by defendant. The State declined to physically partition the property, claiming such a division would adversely affect the management and operation of the impoundment facility. At various times the parties considered land trades, a sale by defendant if the State could secure a permit so defendant could build impoundments on adjacent property, and donation of the land to the State, all without agreement.

In 1991, the Wildlife Resources Commission asked the State Property Office, a division of the Department of Administration ("DOA"), to assess alternatives to the joint ownership. In October of 1995, the Wildlife Commission adopted a resolution requesting that DOA acquire defendant's interest by condemnation since all prior negotiations had failed. On 24 June 1996, defendant filed a petition for partition against the State. The Governor and the Council of State approved an action of condemnation as requested by DOA on 6 August 1996, and on 29 August 1996, the State, through DOA, filed a Complaint and Declaration of Taking and Notice of Deposit for defendant's one-fifth interest. The State deposited $200,000 in Pamlico County Superior Court, and title in the one-fifth interest thereby immediately vested in the State, as provided by N.C. Gen. Stat. section 136-104 (1993).

The State moved to dismiss defendant's partition proceeding on grounds of sovereign immunity and mootness on 16 September 1996. On 27 September 1996, defendant voluntarily dismissed its partition proceeding; defendant reinstituted the partition action on 26 September 1997. The State again filed a motion to dismiss on grounds of mootness and sovereign immunity on 21 October 1997. The State's motion to dismiss the partition suit was granted on 24 April 1998, but defendant still contests the validity of the taking by eminent domain.

Defendant asserted in the trial court that the taking was improper because it was beyond statutory authority and was not for a public purpose. The trial court denied defendant's motion to dismiss, and from this order defendant appeals. An opinion filed concurrently with this one, *Coastland Corporation v. N.C. Wildlife Resources Comm'n*,

134 N.C. App. 343, —— S.E.2d —— (1999), addresses the issues of mootness and sovereign immunity raised by the partition proceeding. Here we address defendant's arguments regarding the propriety of the taking.

[1] Defendant assigns error to the trial court's conclusions of law that the State was authorized to condemn the undivided one-fifth interest pursuant to N.C. Gen. Stat. sections 146-22.1 (1) and (10) (1991) and pursuant to N.C. Gen. Stat. section 113-306 (1997). The DOA's authority to condemn land is found in Chapter 146, Article 6 of our General Statutes.

> In carrying out the duties and purposes set forth in Chapters 143 and 146 of the General Statutes, the Department of Administration is vested with the power of eminent domain . . . . The power of eminent domain herein granted is supplemental to and in addition to the power of eminent domain which may be now or hereafter vested in any State agency. . . and [DOA] may exercise on behalf of such agency the power vested in said agency or the power vested in [DOA] herein.

N.C. Gen. Stat. § 146-24.1 (1991). The duties of DOA include acquiring land for state agencies. *See* N.C. Gen. Stat. § 143-341 (4)(d) (1999); *State v. Club Properties*, 275 N.C. 328, 331, 167 S.E.2d 385, 387 (1969). In acquiring property, "the Department of Administration may follow the procedure set forth in G.S. 146-24 or the procedure of such agency, at the option of the Department of Administration." G.S. § 146-24.1. Therefore, DOA can act to condemn land using *either* its own authority, here alleged to be found in section 146-22.1(1) and (10), *or* the authority of the requesting agency, here alleged to be section 113-306. Procedurally, DOA can act to condemn defendant's land *either* under section 146-24, which directs DOA to use the Board of Transportation procedures found in Chapter 136, Article 9 ("Transportation procedures"), *or* under Chapter 40A, which dictates the Wildlife Resources Commission's procedure to take property. *See* N.C. Gen. Stat. §§ 146-24 (1991); 113-306(a).

It is clear that the State utilized the Transportation procedures in condemning defendant's land. Both the complaint and the declaration of taking definitively state that "the Department of Administration by virtue of G.S. 146-24 and G.S. 146-24.1 is authorized to exercise the power of eminent domain and acquire said lands by condemnation in the same manner as provided for by the Board of Transportation by Chapter 136, Article 9." This statement refers to section 146-24,

which gives DOA power to condemn using Transportation proce-
dures, and section 146-24.1, which allows DOA to choose between
Transportation procedures and agency procedures. The statement of
authority in the complaint indicates that DOA has chosen to use
Transportation procedures rather than agency procedures.
Furthermore, the Resolution of the Council of State authorizing emi-
nent domain in this case provides that DOA is authorized to acquire
the property "in the manner prescribed by Chapter 146 Article 9,
Chapter 136 of the General Statutes of North Carolina." Chapter 136,
Article 9 is the Transportation procedure. No mention is made of sec-
tion 113-306 or Chapter 40A in the complaint, the declaration, or the
authorization. Finally, in a taking under the Wildlife Resources
Commission's procedure, the State must include a statement regard-
ing the timber, buildings, structures or fixtures on the property, and
no such recitation appears in the complaint here. *See* N.C. Gen. Stat.
§ 40A-41 (1984). As such, the procedural propriety of the taking must
rise or fall on the Transportation procedure.

N.C. Gen. Stat. section 146-23 (1991) requires that a state "agency
desiring to acquire land . . . shall file with [DOA] an application set-
ting forth its needs." When DOA receives the application, it must
"investigate all aspects of the requested acquisition" and determine
(1) the actual need for the property; (2) availability of other land
already owned by the State; (3) availability of other land not owned
by the State but which might meet the agency's needs; and (4) the
availability of funds to buy the requested land. G.S. § 146-23; *Club
Properties*, 275 N.C. at 331, 167 S.E.2d at 387. After this full investi-
gation, DOA "may make acquisitions at the request of the Governor
and Council of State." G.S. § 146-23.

The trial court made the following finding of fact:

The State followed the usual procedures set forth in Chapter 146
of the General Statutes to effect the condemnation of Defendant's
interest in the land. The Commission requested the Department
of Administration to acquire Defendant's interest in the subject
property and recommended that it be acquired by condemnation,
if necessary. The Department of Administration determined: that
acquisition of the property was necessary as an integral part of
the Pamlico Point Waterfowl Impoundment and Marshes; that
there was no land already owned by the State or any State agency
available for this purpose and that there were no other lands
available either by purchase, condemnation, lease or rental

which would meet the needs of the Commission, (although other impoundment property was for sale in Pamlico County.) that the Department had been unable to obtain the property through negotiations; that funds necessary for the acquisition are available in the budget of the Commission; that the acquisition was in the best interest of the State and it recommended to the Governor and Council of State that the property be condemned.

Defendant contends there is no evidence in the record to support the trial court's finding of fact. We disagree.

The record indicates that as early as 1989 the Wildlife Commission asked DOA to become involved in negotiations regarding defendant's interest in the property. Affidavits indicate that DOA determined "[i]n order to continue [the State's] operation of these governmental facilities unhindered," the State needed to acquire defendant's interest. This assertion is further supported by correspondence from defendant's former counsel dated 18 July 1996 in which defendant threatens to "lease his undivided interest to a private group." The record contains testimony from a DOA employee and wildlife biologists that no other land would allow the continuing operation of these state-owned impoundments and that outright ownership by the State of such impoundments "is in the public's interest." Furthermore, there is testimony that funds were available with which to purchase defendant's interest. Finally, there is testimony from the Acting Director of the State Property Office division of DOA that employees of DOA "ha[d] thoroughly investigated all aspects of the requested acquisition." From the affidavits and exhibits, together with the Secretary of Administration's findings denoting that each requirement of the statute was addressed, the trial court could reasonably determine that DOA properly investigated "all aspects of the requested acquisition" as required under section 146-23. This assignment of error is overruled.

As we stated above, once compliance with section 146-23 is established and DOA determines "that it is in the best interest of the State that land be acquired," DOA must negotiate with the owners of the desired land. N.C. Gen. Stat. § 146-24(a) (1991). If these negotiations are unsuccessful, DOA may request permission from the Governor and the Council of State to exercise its right of eminent domain "in the same manner as is provided for the Board of Transportation by Article 9 of Chapter 136." N.C. Gen. Stat. § 146-24(c) (1991).

STATE v. COASTLAND CORP.

[134 N.C. App. 269 (1999)]

The Transportation procedures require that the condemnor file a complaint and a declaration of taking in the superior court of the county where the land is located. *See* N.C. Gen. Stat. § 136-103(a) (Cum. Supp. 1998). The complaint must contain:

(1) A statement of the authority under which and the public use for which said land is taken.

(2) A description of the entire tract . . . .

(3) A statement of the estate or interest in said land taken for public use . . . .

(4) The names and addresses of those persons who the Department of Transportation is informed and believes may have or claim to have an interest in said lands . . . .

(5) A statement as to such liens or other encumbrances . . . upon said real estate . . . .

(6) A prayer that there be a determination of just compensation in accordance with the provisions of this Article.

N.C. Gen. Stat. § 136-103(c) (Cum. Supp. 1998). The declaration of taking must contain or have attached:

(1) A statement of the authority under which and the public use for which said land is taken.

(2) A description of the entire tract . . . .

(3) A statement of the estate or interest in said land taken for public use . . . .

(4) The names and addresses of those persons who . . . may have or claim to have an interest in said lands . . . .

(5) A statement of the sum of money estimated by said Department of Transportation to be just compensation for said taking.

N.C. Gen. Stat. § 136-103(b) (Cum. Supp. 1998). The filing of the complaint and declaration must be accompanied by a deposit of the amount of money listed in subsection (b)(5). N.C. Gen. Stat. § 136-103(d) (Cum. Supp. 1998). Upon the filings and deposit, title vests in the Department of Transportation. *See* G.S. § 136-104. We have reviewed the State's filings, and we hold that each of the necessary elements was included in the complaint and declaration.

**[2]** Defendant next contends that the statement of public use is defective. This essentially is defendant's argument that the State lacked statutory authority to take defendant's property. We hold the statement of public use is sufficient and the State had authority to take defendant's interest by eminent domain.

DOA "is authorized and empowered to acquire by purchase, gift, condemnation or otherwise: . . . (10) Utility and access easement, rights-of-way, estates for terms of years or fee simple title to lands necessary or convenient to the operation of state-owned facilities." G.S. § 146-22.1. Both the complaint and the declaration state that "[s]aid lands are an integral part of the Wildlife Resources Commission governmental facilities at the Pamlico Point waterfowl impoundments and marshes." We believe this sufficiently invokes a public use since G.S. § 146-22.1(10) specifically authorizes DOA to take "fee simple title to lands necessary or convenient to the operation of state-owned facilities."

Defendant does not assign error to the trial court's findings of fact that the State incurs expense to manage the property and that the primary purpose of the management is to provide "food and winter habitat for migrating waterfowl, which in turn, provides waterfowl hunting opportunities to waterfowl hunters." The State owns the impoundments and is operating them with the necessary outbuildings, pumps, and pump stations. The legislature has determined that lands "necessary or convenient to the operation of state-owned facilities" may be taken by condemnation, G.S. § 146-22.1(10), and "only the legislative [branch] can authorize the exercise of the power of eminent domain and prescribe the manner of its use." *Club Properties*, 275 N.C. at 334, 167 S.E.2d at 389. Substantial evidence was received that these state-owned facilities are operated by the State for both hunting and conservation endeavors. The purpose of the taking is statutorily authorized by section 146-22.1 (10), the State complied fully with the Transportation procedures, and defendant's protestations to the contrary are overruled.

**[3]** The second power under which DOA may institute a taking is under the requesting agency's authority. *See* G.S. § 146-24.1. The Wildlife Resources Commission's powers of condemnation are set forth in section 113-306, providing that "[i]n the overall best interests of the conservation of wildlife resources, the Wildlife Resources Commission may . . . condemn lands in accordance with the provisions of Chapter 40A." The trial court held as a matter of law that DOA was authorized to take defendant's interest under this agency

authority, as well as under section 146-22.1(10). Defendant contests this determination.

We decline to reach this question since we already have determined that the State properly condemned defendant's property under DOA authority in G.S.146-22.1(10), using the Transportation procedures in Chapter 136. The State may acquire less than a fee simple interest in property, as evidenced by the statutory requirement that the complaint and declaration denote the estate or interest sought. *See* G.S. §§ 136-103(b)(3); 136-103(c)(3). Furthermore, we see no reason why the State should not be able to condemn an undivided partial interest in property when it could condemn a fee simple interest in the entire parcel. Though we are inclined to agree with the State, we need not decide whether hunting is "[f]or the public use or benefit," N.C. Gen. Stat. § 40A-3 (Cum. Supp. 1998), under agency authority because we find express statutory authority to condemn defendant's interest as necessary and convenient for the operation and maintenance of the government-owned impoundments. *See* G.S. § 146-22.1 (10).

Affirmed.

Judges TIMMONS-GOODSON and HORTON concur.